IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ePLUS, INC.<br><br>                              Plaintiff.<br><br>        v.<br><br>SAP AMERICA, INC., et al.<br><br>                              Defendants. | Civil Action Number 3:05CV281-JRS |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff ePlus, Inc.'s ("ePlus") Motion for Protective Order Governing Discovery and Handling of Confidential Materials, filed on July 12, 2005. For the reasons expressed above, ePlus's motion for Protective Order is GRANTED.

I.

This is a patent infringement action arising under 35 U.S.C. §§ 271, et seq., pertaining to three patents owned by ePlus. ePlus states that it has met with Defendants SAP America, Inc. and SAP AG (collectively "SAP") numerous times and agree that a protective order is needed. However, two key provisions remain in dispute.[1] First, SAP wants to include a provision prohibiting against any counsel involved in this litigation, including in-house and outside counsel, from representing the client for a period of two years after the conclusion of this litigation in connection with any

---

[1] SAP initially identified a third area of disagreement regarding a proposed procedure to address discovery of third party confidential information that is in the possession of the parties. SAP now believes that it would be premature to address this issue. ePlus alleges that discussion of this proposed provision it is not premature. However, since SAP has not made any argument regarding this topic, the Court finds it inappropriate to consider this provision at this time.

intellectual property ("IP") matter. Second, SAP insists that a second tier of confidentiality be added to the protective order which would create a category of HIGHLY CONFIDENTIAL materials to which access would be granted to outside counsel only.

II.

A. Prohibition Regarding Representation by Counsel

SAP argues that a provision should be included in the protective order which would bar designated in-house and outside counsel who have access to CONFIDENTIAL discovery materials from representing any of the parties to the litigation for the duration of the litigation and two years following the final resolution of the litigation with respect to "patent application preparation, patent prosecution or intellectual property acquisition activities." See SAP Resp., Ex D, SAP Proposed Order §§ 2.1(b)-(c) ("SAP Proposed Ord.").[2] ePlus objects to the imposition of such a provision.

SAP states that counsel for ePlus will have access to very sensitive and confidential information such as strategies for intellectual property rights, ongoing patent applications, and plans for further products. SAP contends that a protective order precluding counsel with access to CONFIDENTIAL information from ongoing IP acquisition and patent prosecution activities is necessary because of the competitive nature of patent preparation and prosecution.[3] Specifically,

---

[2] Section 2.1(c) of SAP's proposed order inexplicability limits patent prosecution activities to those "related to any SAP product or service on behalf of any of the parties or Designating Parties in this litigation."

[3] SAP states that ePlus agreed to such a restriction in the ePlus, Inc. v. Ariba, Inc., Civ. Act. No. 1:04cv612, litigation, but fails to offer a persuasive reason why it now opposes such a provision. ePlus states that it agreed to a similar, but less broad restriction in its litigation against Ariba as a matter of compromise; however, its experience in that case proved that the restrictions were unnecessary, and served only to complicate the parties' ability to fully represent their clients.

SAP submits that the provision is needed to address the risk of inadvertent disclosure. SAP maintains that once CONFIDENTIAL information is made available to opposing counsel, it will be difficult, if not impossible, for counsel involved in patent prosecution activities to completely compartmentalize and effectively "quarantine" the knowledge gained from the CONFIDENTIAL information. Lastly, SAP argues that the proposed restriction will neither impair ePlus's ability to litigate this matter nor restrain ePlus's counsel's practice of law.

"[T]he factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Here we dealing with a provision which restricts designated in-house and outside counsel with access to CONFIDENTIAL materials from representing any of the parties in this litigation for the duration of this case and two years after its completion. The two year ban on counsel's ability to represent the parties after the completion of this litigation is overly restrictive. SAP's argument *presumes* that all designated counsel with access to CONFIDENTIAL materials will inadvertently disclose confidential material irrespective of the role that counsel played, or might play in the future, with respect to their clients. Accordingly, SAP has not provided sufficient factual circumstances to explain why such a sweeping prohibition on counsel is warranted in this case.

The attorneys designated by the parties will all have an ethical obligation to provide the safeguards necessary to ensure that no improper use of confidential information will occur. Another layer of protection is provided by a provision in the proposed protective order requiring that materials designated as CONFIDENTIAL may only be used for the purposes of this litigation. Moreover, many of the documents likely to be designated as CONFIDENTIAL will eventually be

disclosed to the public since the parties are likely to use such documents in summary judgment proceedings and at trial. In the absence of a specific factual reason why designated counsel should be barred from representing the parties for two years after the conclusion of this litigation, the provision limiting the use of CONFIDENTIAL material to this litigation and counsel's ethical obligations will be sufficient to protect the interests of the parties.

B. Provision for Two Levels of Confidentiality

SAP requests that the protective order provide for a two-tiered confidentiality structure. The first tier would limit access to certain materials by designing them "CONFIDENTIAL." The second tier would be designated as "HIGHLY CONFIDENTIAL– OUTSIDE ATTORNEYS' AND CONSULTANTS' EYES ONLY" material to which access would be granted to outside counsel only.

SAP asserts that its continued success is predicated on its competitively sensitive information, which it cannot risk falling into the hands of ePlus or its competitors. SAP argues that a second tier of confidentiality is warranted where the parties are competitors or potential competitors. See Blanchard & Co., Inc. v. Barrick Gold Corp., 2004 U.S. Dist. LEXIS 5719, at *24 (E.D. La. 2004) ("[W]hile such dual tier designation may not be commonplace in ordinary litigation, such restrictions are commonplace where parties are competitors."). SAP submits that the second level of confidential material is necessary to avoid that inadvertent disclosure of its most sensitive confidential information to employees of ePlus or to potential competitors.

SAP further argues that a second tier of protection is needed to assist in and ease the production of confidential information from third parties. SAP maintains that third parties will be more willing to cooperate and produce their own confidential information if they can be assured that

only outside attorneys and consultants, not employees of ePlus or SAP, will receive such information. Lastly, SAP states that ePlus has not explained why its employees need access to this information or how it will be prejudiced if this information is made accessible only to ePlus's outside counsel and consultants. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992); Intel Corp. v. VIA Techs., Inc., 198 F.R.D. 525, 531-32 (N.D. Cal. 2000).

A two-tiered document confidentiality structure will tend to result in the parties' over-use of the highest level of confidentiality, which in turn will result in the increase of motions from the non-producing party to re-designate improperly designated materials. This second level will only unnecessarily complicate the parties ability to prosecute the case and discuss pertinent information with in-house counsel. Given the fast pace of litigation in this Court, it is essential that the counsel be able to communicate certain facts with its client. See e.g. Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D. 240, 242-43 (E.D. Va. 1999) (noting fast pace of litigation and need for assistance of client's in-house counsel to help make quick tactical decision as factors justifying in-house counsel's access to confidential documents).

There is no need for a two-tiered structure because the provisions of the protective order will apply equally to all parties. Both parties have the same interest in ensuring that the documents it produces does not result in disadvantage to it from a competitive business standpoint. Moreover, the second tier of confidentiality is unnecessary since many of the documents to which it would apply will become accessible to the public during the course of trial or summary judgment.

III.

For the reasons articulated above, ePlus's motion for Protective Order is GRANTED. The parties have advised the Court that other than the provisions discussed above, they are in agreement

with respect to the other provisions in the proffered protective orders. Accordingly, the Court hereby ADOPTS the proposed protective order submitted by ePlus. An appropriate Order shall issue.

ENTERED this   30th   day of AUGUST, 2005

                                            /s/ James R. Spencer
                                          JAMES R. SPENCER
                                          UNITED STATES DISTRICT JUDGE